UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
PUES FAMILY TRUST IRA, BY MICHAEL
PUES EXECUTOR OF THE ESTATE

                    Plaintiff,

       - against -

PARNAS HOLDINGS INC AND
LEV PARNAS, INDIVIDUALLY

                    Defendants.
-------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 14 2011 ★

**SUMMONS ISSUED**

Civil BROOKLYN OFFICE

CV 11  COMPLAINT  5537

**JURY TRIAL
DEMANDED**  SPATT, J.

LINDSAY, M.J.

      Plaintiff Pues Family Trust IRA (hereinafter "Pues Trust", "Pues Family Trust", or the "Trust"), on behalf of Michael Pues (hereinafter "Pues"), as Executor of the Estate of the Pues Trust, through its attorneys, Hantman & Associates, as and for its claims against Defendants Parnas Holdings Inc. ("Parnas Holdings") and Lev Parnas ("Parnas") both as the alter ego of Parnas Holdings Inc. and in his individual capacity (collectively, the "Defendants"), alleges as follows:

## INTRODUCTION

      The within action is based upon the failure and refusal by Defendants to repay $350,000 loaned to them by the Pues Family Trust for a period of 45 days (the "Loan"). The Loan was a bridge financing agreement made in two parts; the first on January 26, 2011 in the amount of $50,000, and the second on January 28, 2011 in the amount of $300,000, with the understanding that the total principal balance of $350,000 was to be repaid in full on or before March 15, 2011.

      Plaintiff informed Defendants that failure to repay the loan within the prescribed 45 day time period would subject the Pues Family Trust to substantial tax liabilities and penalties which sums, if incurred, would be added to the Loan principal. Plaintiff contends that the Defendants

elicited the Loan in a deliberate, coercive and well-orchestrated scheme to steal $350,000 from Plaintiff by fraudulently inducing Plaintiff to enter into the Loan and the subsequently breaching the terms of the Loan when defendants willfully failed and/or refused to repay the Loan as agreed.

Said actions also constitute fraudulent misappropriation of $350,000 from the Pues Family Trust, including the within causes of action for fraud, conversion, prima facie tort and unjust enrichment of each of the Defendants. The actions, means and misconduct of Defendants, as set forth more fully herein, constitutes unlawful conduct including, but not limited to, the violation of state and federal securities laws, wire fraud and mail fraud - subject to referral to federal and state law enforcement authorities and civil punitive damages[1].

## PARTIES

1.      Plaintiff Pues Family Trust, located at 525 West Bay Drive, Long Beach, New York 11561, is a trust set up by William C. Pues for the benefit of The Pues Family in general and for Mary E. Pues, wife of William C. Pues. Mary E. Pues was 71 years old at the time the Trust was set up on or about April 28, 2009.

2.      Defendant Parnas Holdings is, upon information and belief, a corporation organized under the laws of the state of Florida with principal place of business located in Boca Raton, Florida.

3.      Defendant Parnas, a resident of Boca Raton, Florida, is a principal and alter ego of Parnas Holdings and the individual that committed those acts and omissions complained of herein.

---

[1] Conspiracy to Commit and Committing Mail and Wire Fraud - Title 18 U.S.C. § 1349 and Securities Fraud - Title 15 U.S.C. §§ 77q(a) and 77(x)

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 in that it is a civil action between a citizen of a State and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000 exclusive of costs and interest.

5.      This Court also has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Sections 1331, 1338, and 1367(a), because Plaintiff has stated claims for relief under Title 15 of the United States Code, and the state law claims stated herein form part of the same case or controversy as the claim that is subject to the Court's original jurisdiction.

6.      This Court may exercise personal jurisdiction over defendants, as they have purposely committed within this State the acts from which these claims arise.

7.      The Court may also exercise personal jurisdiction over the defendants because, upon information and belief, they conduct continuous, systematic and routine business within this State and the County in which this matter is filed.

8.      Upon information and belief, Parnas, for himself and on behalf of Parnas Holdings, regularly travels to and/or conducts business in New York.

9.      Venue is proper and convenient to this District pursuant to 28 U.S.C. §1391 because this District is one in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred including the origin of the monies at issue and because defendants, upon information and belief, transact substantial business in this District.

## BACKGROUND AND GENERAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION ALLEGED

10.      On April 28, 2009, a document was prepared entitled "Certificate of the Pues Family Revocable Trust Agreement", annexed hereto as Exhibit "A".

11.     The trustees for the Trust were Michael Pues, one of the sons of Mary E. Pues and William C. Pues, who passed away on March 17, 2011.

12.     In or around December 2010, in the City and County of New York, Parnas, on behalf of Parnas Holdings, agreed with Koala Productions, Ltd. (a California Motion Picture Production company; hereinafter "Koala") that Parnas Holdings would fund up to $500,000 for development of the motion picture, known by the working title "Anatomy of an Assassin" (hereinafter "Movie Project"), being produced by Koala.

13.     Parnas was to receive up to 10% or "points" in the Movie Project, with each said "point" representing a percentage of the gross revenues expected to be realized by Koala upon the future release of the Movie Project.

14.     Specifically, Parnas was to receive one (1) "point" per every $50,000 paid to Koala up to $500,000, pursuant to an agreement that was to be completed by Parnas Holdings or before January 15, 2011 and which was memorialized by a signed written agreement between Koala and Parnas Holdings also in December 2010.

15.     Parnas Holdings' December 2010 agreement with Koala called for an immediate initial payment by Parnas Holdings of at least $100,000 to Koala, with the remaining sums payable in full no later than January 15, 2011.  Failure to immediately perform as indicated would result in Parnas losing the ability to participate in the Movie Project, as Koala had other bona fide available investors of interest.

16.     Having previously engaged in a prospective business investment with Pues, Parnas approached Pues seeking his personal investment with Parnas Holdings in Koala's movie project, and though not initially inclined to entertain such an investment, Parnas continued to "sell" Pues on the potential favorable return on such an investment.

4

17.     After meeting with the producer, writer, of the Movie Project, Rudy Durand, Pues indicated an interest to invest in the Movie Project, but did not at that time have comfortable access to $500,000 to underwrite the entire investment being sought by Parnas.

18.     At or about the same time Parnas Holdings entered into the Movie Project agreement with Koala, in mid-December 2010, Parnas expressed to Pues that Parnas Holdings did not have available funds for the initial required $100,000 payment then due.

19.     Thereafter, and upon Parnas' personal assurance that given a brief time he, and/or Parnas Holdings, would have "no problem" raising the full amount of funds (inter alia "up to $500,000") necessary to meet its contractual obligations to Koala by January 15, 2011. Pues agreed to directly fund to Koala the immediately due initial $100,000 and to receive the corresponding two (2) "points"; however, it was also agreed by Pues to allow Parnas Holdings to receive "credit" for Pues' $100,000 investment as counting toward Parnas Holdings' own contractual commitment with Koala (inter alia "to invest up to $500,000" by January 15, 2011).

20.     Promptly thereafter, also in mid-December 2010, Pues did wire directly to Koala the initial $100,000 in funds. Upon confirmation of receipt and source of said funds, Koala accordingly recognized Pues as the payor entitled to the corresponding two (2) "points" in the movie project and, also, to allow Pues' investment to count toward Parnas Holdings' total contractual commitment to Koala.

21.     In and around early January 2011, Pues, Parnas and Mr. Durand had multiple telephonic conversations regarding the status of Parnas Holdings further payment of the remaining balance owing to Koala of $400,000.

22.     Koala informed Parnas repeatedly as the deadline approached that substantial further performance by Parnas as to the remaining $400,000 investment was required for the

movie project.  Nevertheless, upon information and belief, the January 15, 2011 due date for further payment by Parnas Holdings to Koala ultimately expired without performance by Parnas Holdings.

23.     However, upon information and belief, Parnas sought a brief extension of time for Parnas Holdings perform as required, assuring Koala that the required funds were imminently available.

24.     Koala informed Parnas that if significant additional investment funds were not received by February 15, 2011 then Parnas Holdings would be deemed in breach of contract.

25.     Pues met with Parnas in Florida in or about mid- January 2011, at which time Parnas told Pues that Koala needed the remaining $400,000 immediately or his (Pues) initial $100,000 investment would be lost due to Parnas/Parnas Holding's breach of the original contract.

26.     Parnas further explained that due to his own personal financial circumstances, relating to his divorce (the IRS purportedly having temporarily frozen his assets), he was unable to immediately secure "his portion" of the funds intended to meet the Koala contractual commitment.

27.     Believing Parnas' representation that his initial investment was at imminent risk of loss, Pues suggested that he could possibly arrange for a short, 45-day bridge loan of $350,000 from the Pues Family Trust to Parnas Holdings giving Parnas time to resolve his "personal assets" problem and that both Pues and Parnas would "look for" the additional $50,000 needed.

28.     Parnas and Pues agreed that the Pues Family Trust was: (1) to be repaid, in full, within 45 days; (2) that in exchange for making the bridge loan and in lieu of interest, the Trust would receive an "assignment" of some number of the additional "8 points" that Pues expected

6

to be acquired by Parnas Holdings as a result of the payment of the full amount of the bridge loan proceeds to Koala; (3) repayment would cover any costs associated with the Trust making the bridge loan and; and (4) it was expressly stipulated that the bridge loan funds would only be used exclusively for the Koala investment and for no other purpose, specifically stating that that the Trust was unable and unwilling to invest any of its funds directly in the movie project, Parnas Holdings or Parnas, personally.

29.     Upon further specific negotiation it was eventually agreed for Parnas Holdings to provide the Trust with an assignment of two (2) "points" in exchange for making the loan - in lieu of interest; which "assignment" agreement required Koala's written consent. On April 4, 2010 upon receipt of partial payment from Parnas Holdings and request, Koala did provide a written consent to the proposed loan assignment of (2) two "points" in favor of "Pues or his designee" (i.e. the Pues family trust).

30.     In or about early February 2011, Parnas and Pues traveled to Los Angeles, California to meet with Durand in order for Parnas to assure Durand that he (Parnas) was now in possession of the full remaining balance of the previously outstanding $400,000 investment balance for the movie project.

31.     Parnas also wanted Koala to draft a "new" investment agreement that would replace the original (technically twice breached) agreement between Koala and Parnas Holdings.

32.     The new agreement (1) resolved the prior breaches by Parnas Holdings; (2) at Parnas' request, provided for a new "floor" performance commitment by Parnas Holdings to invest "no less than $250,000" in addition to the prior and restated "up to $500,000"; and (3) replaced "Ludy Killer Productions, LLC" as the successor in interest to Koala with regard to the

movie project. Pues was present as a witness at the execution of the agreement by Durand (on behalf of Ludy Killer Productions) and Parnas (on behalf of Parnas Holdings).

33.     After signing the new February 2011 investment agreement, the group of Parnas, Pues and Durand traveled to lunch together during which Pues asked Durand if he (Durand) had received the $350,000 that he (Parnas) was expected by Pues to have already wired in full to Koala. In the presence of Parnas, Durand answered in the negative.

34.     Pues and Durand both pressed Parnas for an explanation upon which Parnas then became angry, told Durand not to worry about it (that they would talk about it later) and, when pressed further by both Durand and Pues about what happened to the money, Parnas angrily responded by accusing Pues of owing Parnas Holdings $1,000,000, which Pues emphatically denied.

35.     Plaintiff Trust is informed, believes, and thereupon alleges that Parnas misrepresented to Pues the amount of Koala's "immediate" minimum further investment funds required (inter alia, to cure the "breach" by Parnas Holdings) and/or misrepresented to Koala the amount of funds actually available as a result of the Trust's bridge loan and, in fact, delivered to Koala only $200,000 of the $350,000 actually borrowed from the Trust; wrongly misappropriating the remaining $150,000 borrowed from the Trust for defendants own personal use or benefit in specific contravention of the bridge loan agreement terms.

36.     Plaintiff Trust is further informed, believes and thereupon alleges that, notwithstanding demands by both Pues and Koala to do so, defendants have continued to refuse and/or failed either to deliver to Koala the remainder of the money or to return to Plaintiff Trust any of the wrongfully withheld $150,000, which was intended by the Plaintiff Trust's bridge loan to be for Koala's use.

8

37.     Defendants have failed and refused to repay the bridge loan funds as of March 12, 2011, or at all.

38.     On or about March 15, 2011 (after the scheduled due date for repayment), Parnas was specifically told by Pues that if the IRA [bridge loan source] funds were not repaid within 15 days (no later than the end of March) the Pues Family Trust would be levied with a 10% penalty and a 38% tax liability, resulting in an additional $161,000 in penalties (constituting incurred costs and expenses associated with Plaintiff Trust making the subject loan) added on top of the $350,000 principal loan amount - for a total repayment demand of $511,000; which combined sum Parnas Holdings subsequently acknowledged and agreed to repay pursuant to a written email from its President as set forth in detail hereinafter.

39.     Plaintiff Trust is also informed, believes and thereupon alleges that Parnas, both individually and in his capacity as an officer and principal of defendant Parnas Holdings, is and has been engaged in a recurring pattern of knowingly false and fraudulent practices with regard to raising "investment" funds related to the Koala movie project as to other third party "investors", in addition to those set forth herein as to Pues and Plaintiff Trust.

40.     More specifically, Plaintiff alleges that: (1) Defendants knowingly caused unauthorized, false and misleading information to be published on its own web site and referred such information directly to prospective "investors" and which conduct resulted in a written "cease and desist" demand from Koala Productions to both Parnas and Parnas Holdings; (2) Defendants knowingly and for the purpose of deceiving prospective "investors" (including but not limited to a Mr. George Hammer of New York), utilized the false and misleading information contained on its web site and undertook other actions and misrepresentations to wrongfully induce said investors to provide Defendants with funds that they believed were being

9

invested directly in the movie project by Parnas Holdings to benefit the success of said movie project and, ultimately its profits to its beneficial stakeholders, including Parnas Holdings shareholders, and/or for Parnas Holdings purported "acquisition" of Koala Productions (both of which representations are and were false and misleading) when, in truth, defendants actually sought and did obtain such funds only for the benefit of Defendants and NOT for direct investment in the Koala movie project or to acquire Koala Productions (which company Plaintiff is informed and believes is not and has never been for sale), and; (3) Plaintiff Trust is informed by an individual known by Pues to be associated with Parnas (Mr. Anthony Nicolosi of Florida) and thereupon believes and alleges that Parnas Holdings has entered into at least one other fraudulent "investment" scheme with a third party client of Nicolosi, whereby Parnas utilized the false information published on the Parnas Holdings web site (as stated above) and to have purportedly "sold half of one point" for the sum of $250,000 in the Koala movie project to said third party as an inducement to "invest" said funds solely in Parnas Holdings and/or Parnas, individually, rather than the motion picture production, and any action to sell any points are known by Pues to be specifically and contractually barred by the express terms of the written contract between Koala/Ludy Killer Productions and Parnas Holdings.

41.    Plaintiff Trust's trustee (Pues) has been informed by Koala/Ludy Killer that it has never received any funds from Parnas and/or Parnas Holding's unauthorized sale regarding the above-mentioned "sold half of one point" for the sum of $250,000.

42.    Parnas represented to Plaintiff Trust's trustee (Pues) and numerous others that (1) he was the youngest and most successful broker of his age in the history of Wall Street; (2) he has and maintains an impeccable reputation throughout the Wall Street community; (3) that he is highly sought after to invest the funds of others because of his honesty and his investment history

of returning profits to every one of his clients; and (4) that he continues to hold a valid investment broker's license against which he has never had a complaint.

43.     Plaintiff Trust is informed, believes and thereon alleges that each of the foregoing representations by Parnas are false and/or intentionally deceptive or misleading and were made for the actual purpose of inducing the trust, confidence and justifiable reliance of Plaintiff's trustee (Pues) as to the misrepresentations alleged throughout the within Complaint.

44.     Moreover, as to Parnas Holdings and, if truly authorized to operate under any valid broker's license and/or as an active principal of Parnas Holdings, at no time was the Trust ever presented with a private placement memorandum or a subscription agreement, nor was the Trust ever vetted as a qualified and accredited investor as required by the Financial Industry Regulatory Authority ("FINRA") or the Securities and Exchange Commission ("SEC").

45.     The following written, electronic communications exchanged as indicated therein between Pues, Parnas (referred to as "Lev") and also, David Correia, President of Parnas Holdings, verify and confirm the key material terms of the bridge-loan agreement, including but not limited to (1) the loan amount ($350,000); (2) the loan repayment term being 45 days (to be repaid by March 12, 2011); (3) that the principal repayment sum now owing and unpaid is to include the added tax and penalty amounts incurred due to defendants' untimely repayment; and (4) the authorized assignment of two (2) points in the movie project in relation to said loan repayment.

To wit:

> 1)   Hi Lev hope all is well. Can you email the document ion for the ten points of the movie deal with Rudy? as I have wired Rudy $100.000.00 and wired to Parnas from Pues family trust IRA $350.000.00. AS previously agreed upon to be paid back within the terms of 45 days from the date of January 26, 2011. It is my expiation that these terms will be agreed upon in according with our

verbal agreement dated January 24, 2011. As discussed the tax penalty for not paying the IRA back within the allotted time is $161.000.00. I have given $450.000.00 so far ill try to raise the last $50,000.00 and have it wired to Rudy. I need the contracts in increments of $50,000.00 from your lawyer so I can possibly get the $350,000.00 plus penalty money raised and paid back to family trust.

---

2)   Hi Lev< Hope this finds you well. I was hoping you could send me verification of the receipt of the 10% we are expecting from the movie deal with Rudy. As you know, I personally wired Rudy $100,000.00 in addition to the $350,000.00 bridge loan money sent to Parnas Holdings from the Pues Family Trust IRA, also intended for the movie deal. As previously discussed, the terms of the bridge loan were that the $350,000.00 was to be paid back net 45 from the date of 1/26/2011. As these terms were not met, it is my expectation that you will honor our verbal agreement of 1/24/2011. wherein we agreed that 1% of the adjusted gross from the movie would be paid to myself and 1% to be paid to the Pues Family Trust along with the initial $350,000.00 and all taxes fees and penalties (currently $161,000.00). My contribution thus far has been $450,000.00 I will try to raise the additional money and have it sent to Rudy.In the meantime, please forward copies of the contracts that we discussed in your office last week regarding raising the additional funds for the movie, so that I can get the $350,000.00, plus plus paid back to the Family Trust.  Thanks in advance.

Mike.

3)   Lev

I wanted to address with you again, as previously stated in my e-mail dated March 27, 2011, as well as in our recent conversation in your office this past Monday, the outstanding balance on the unpaid $350,000.00 loan, made to Parnas Holdings, Inc. from the Pues Family Trust IRA.  The loan was made at the request of yourself as a bridge loan to Parnas Holdings, Inc. to be exclusively utilized as investment capital to save the deal with Koala Productions for the movie "Anatomy of an Assassin" As you are aware the loan was governed by very specific terms and was to be repaid by March 12, 2011.  These terms were not met, and as a result taxes and penalties totaling $161,000.00 were assessed by the IRS bringing the total outstanding amount due to the Pues Family Trust from Parnas Holdings, Inc to $511,000.00

At the demand of my recently widowed mother and my siblings, remit to me within three business days a certified check or wire transfer made payable to the Pues Family Trust in the outstanding amount due. Lev, please note, my family has been very patient regarding this issue and the terms indicated above

are non negotiable.  They have made it clear to me that no further negotiation or excuses will be tolerated.  As the Executor of my family's trust I am left with no choice but to pursue this matter as instructed by my family. As you know my father passed away on March 17, 2011 and the repayment of the loan is necessary so that we may settle his estate. My previous correspondence with you regarding this matter went unanswered, therefore this letter will serve as final notification to Parnas Holdings, Inc and failure to comply will result in legal action.


Michael Pues
Executor, Pues Family Trust

---------------------------------------------------------------------------------

4)   Lev, it is very disappointing that I have not heard from you regarding the e-mail I sent to you Sunday night with reference to the outstanding loan made to you from my family's trust account.  As we have discussed on numerous occasions, this loan was made as a good faith gesture from my family to Parnas Holdings, to assist in the salvation of the Koala Productions movie deal.  In light of your non responsiveness  I have been advised by our family attorney to forward a copy of the e-mail sent Sunday to Mr. Rudy Durand to apprise him of the situation as it currently exists.  This is not the preferred route, however, it is becoming increasingly clear that PARNAS HOLDINGS, INC, any you, as it's Principal, does not intend to honor our agreement for re-payment of the loan, and therefore are left with no other recourse.

Michael

---------------------------------------------------------------------------------

5)   Lev,

I wanted to send you this e-mail to clear up any mischaracterizations regarding the facts surrounding the loan made to Parnas Holdings, Inc from the Pues Family Trust.

I want to make it clear, that you, Lev Parnas, have personally guaranteed repayment of this now overdue loan.  It is my expectation that in order to circumvent the need for legal action against you and your company, you honor the agreement we discussed the other day. Wherein you stated that you are currently in possession of seven points (of the Koala Productions film, "Anatomy of an Assassin) which you will have legally assigned as collateral on the outstanding loan to the Pues Family Trust.  Providing the outstanding amount is received by July 1, 2011 this collateral would revert back to you.  It was my understanding that the assignment of the seven points was to be

13

discussed with Dave Correia yesterday, and that I would be receiving a confirmation phone call today.  I have yet to receive any word from you.


Mike
--------------------------------------------------------------------------------

Sent from my iPhone

On May 11, 2011, at 12:57 PM, Michael Pues <veteranstone@optonline.net> wrote:

6)   Lev,

 Once again I find myself in the awkward position of needing to e-mail you regarding your not keeping your word. Per our conversation of just the other day, you ASSURED me that I would be receiving from your attorney verification of our agreement, insuring the collateral transfer of the seven percentage points from Parnas Holding, Inc, to the Pues Family Trust. I have NOT received said correspondence.

Lev, you and Dave both on separate occasions have told me that I would be receiving the information and it has not arrived, so my question to you is this, what is out next step?
--------------------------------------------------------------------------------

5/25/2011 9-04 p.m. - from DAVE CORREIA, President, Parnas Holding, Inc. to Michael Pues – [PARTY ADMISSION – DECLARATION AGAINST INTEREST]

7)   Michael,

as per our conversation a few moments ago, I am sending you this email while we are waiting for the documents to be put together by our attorney. In the meantime, Lev wanted you to have something in writing for your security. **Parnas Holdings, Inc agrees to put up as collateral, 2pts of our ownership of the film "Memory of a Killer" for the $510k owed to the Pues family Trust. As you know, this is the amount agreed upon between you and Lev yesterday.** I will, however, mention to him that you are requesting a change in these terms. I or Lev will get back to you with a response to that request at some point tomorrow. Please note that this will entail holding off the lawyer from executing this agreement until both sides agree upon the said terms......

[ADDITIONAL INFORMATION REGARDING AN UNRELATED "BOAT DEAL" - INTENTIONALLY OMITTED]

David Correia

14

561-445-6612

46.     The actions and conduct of Defendants, as set forth herein, were done directly by or on behalf of Parnas Holdings with the express consent, approval or ratification of each officer, managing agent or principal of each corporate defendant.

## FIRST CLAIM
### Breach of Contract

47.     Plaintiff repeats and alleges each and every allegation set forth in the previous paragraphs as if they were set forth at length herein.

48.     The Pues Trust agreed to lend defendants bridge loan funding of $350,000 conditioned upon full repayment no later than March 12, 2011 and, in lieu of interest, an assignment of two (2) "points" in that certain movie project existing between defendants and a third party producer (Koala) as more specifically set forth herein above.

49.     Defendants have failed to and continually refuse to repay the $350,000 plus added penalties, costs and damages arising from Defendants' breach, in spite of numerous demands to do so.

50.     Defendants, and each of their, acts, misrepresentations and omissions, as set forth more fully herein above, also constitute a breach of the covenant of good faith and fair dealing inherent on and imposed by law upon each valid contract.

51.     As a result of the foregoing, the Trust has been injured and is entitled to all damages authorized by law and in an amount to be determined at trial.

## SECOND CLAIM
### Fraudulent Inducement of Contract

52.     Plaintiff repeats and alleges each and every allegation set forth in the previous paragraphs as if they were set forth at length herein.

15

53.     As described more specifically herein above, Defendants made material false promises and misrepresentations to induce Plaintiff to make a short-term bridge loan to defendants in the principal sum of $350,000.

54.     Among other things, defendants promised to fully repay the principal sum of $350,000 no later than March 12, 2011, while also specifically and knowingly aware that the source of such funds [an IRA] would incur substantial added costs and penalties if not timely repaid.

55.     Defendants wrongly and deceptively coerced Plaintiff's executor, Pues, into recommending the loan to the Plaintiff Trust by misrepresenting that Pues prior personal investment of $100,000 in the same movie project would be imminently "lost" if the additional funds were not immediately provided to defendants.

56.     Defendants knowingly and wrongfully failed to utilize the funds loaned by Plaintiff solely to cure defendants breach of the movie project agreement as required by and promised to Plaintiff, or to acquire for the benefit of Parnas Holdings investors and creditors the maximum amount of total "points" in the movie project that such funds would have provided as a return on investment and/or credited asset of Parnas Holdings subject to the claims of creditors such as Plaintiff herein.

57.     Defendant Parnas misrepresented his own credentials and valid licensure status as an investment broker.

58.     Defendants, and each of them, knew or should have known that the promises, representations, acts and/or omissions as set forth herein above were false or made without intention to perform and with the intent and expectation that they would be relied upon by the Trust in deciding whether to lend the money and upon what conditions; or, alternatively, that

said statements were made recklessly, without regard for their truthfulness and with an unjustifiably high risk of causing harm to Plaintiff Trust.

59.   Further, Defendants knew the source of said funds were an IRA of a restricted family trust such that if the borrowed funds were not timely repaid to the Trust, it would become exposed to added tax penalties, liabilities and other associated costs totaling a minimum of $161,000.

60.   From the outset, it was the true intention of the Defendants to keep a portion of the loan funds for themselves and to utilize the remaining funds for their wrongful and unjust enrichment.

61.   Defendants had no intention of ever replacing the short-term bridge funding with any manner of subsequent funding or by the imminent "release" of his purportedly "frozen" personal assets.

62.   Moreover, Defendants intended to mislead Plaintiff, as a creditor of defendant Parnas Holdings (as well as other direct investors in Parnas Holdings), as to the credentials and valid licensure status of Parnas and as to true value and extent of Parnas Holdings "points" (corporate assets) actually acquired in the Movie Project, or no justification now or ever has existed for defendants to acquire any ownership interest in the movie production company itself.

63.   The Trust justifiably relied upon these false promises and misrepresentations to its ultimate damage and detriment as more specifically set forth herein above.

64.   As a result of the foregoing, the Trust has been injured and is entitled to general and special damages in an amount to be determined at trial.

65.   Based upon the specific factual allegations set forth above and incorporated herein, Plaintiff Trust further alleges that all of the Defendants stated conduct has a tendency in

reason to cause a reasonable person in the position of a trier of fact, to conclude that such actions constitute malice, thereby entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of defendants.

66.    Defendants' conduct was intended by Defendants to cause injury and damages to Plaintiff, the future heirs and beneficiaries of the Plaintiff Trust, in that the alleged conduct would necessarily deprive Plaintiff of the value of a lifetime of effort and earnings by its Trustor and deny the beneficiaries of the Plaintiff their rightful enjoyment and interest in both the safety, security and beneficial purpose of Plaintiff's trustor, William C. Pues' intended testamentary goals.

67.    Further, Defendants engaged in intentional misrepresentation, deceit, and/or the concealment of material facts known to the defendants with the intention to deprive Plaintiff's heirs and beneficiaries of their legal rights or to otherwise cause injury as manifested by their continuing and complicit pattern of unlawful conduct to deny Plaintiff the full benefits and use its personal property funds.

## THIRD CLAIM
### Conversion

68.    Plaintiff repeats and alleges each and every allegation set forth in the previous paragraphs as if they were set forth at length herein.

69.    Defendants, at all times herein alleged, knew and intended that they would not cause or allow to be caused the repayment of the $350,000 of Plaintiff's funds: instead such funds were coerced from Plaintiff under false and fraudulent pretenses and either kept or diverted by Defendants for their own personal use or benefit.

70.    As a result of the foregoing, The Trust suffered and continues to suffer damages in an amount to be determined at the time of trial.

71.     Defendants' conduct was intended by Defendants to cause injury and damages to Plaintiff, the future heirs and beneficiaries of the Plaintiff Trust, in that the alleged conduct would necessarily deprive Plaintiff of the value of a lifetime of effort and earnings by its Trustor and deny the beneficiaries of the Plaintiff their rightful enjoyment and interest in both the safety, security and beneficial purpose of Plaintiff's trustor, William C. Pues' intended testamentary goals.

72.     Further, Defendants engaged in intentional misrepresentation, deceit, and/or the concealment of material facts known to the defendants with the intention to deprive Plaintiff's heirs and beneficiaries of their legal rights or to otherwise cause injury as manifested by their continuing and complicit pattern of unlawful conduct to deny Plaintiff the full benefits and use its personal property funds.

**FOURTH CLAIM**
**Fraud**

73.     Plaintiff repeats and alleges each and every allegation set forth in the previous paragraphs as if they were set forth at length herein.

74.     As described more specifically herein above, Defendants made material false promises and misrepresentations to induce Plaintiff to make a short-term bridge loan to Defendants in the principal sum of $350,000.

75.     Among other things, Defendants promised to fully repay the principal sum of $350,000 no later than March 12, 2011, while also specifically and knowingly aware that the source of such funds [an IRA] would incur substantial added costs and penalties if not timely repaid.

76.     Furthermore, Defendants wrongly and deceptively coerced Plaintiff's executor, Pues, into recommending the loan to the Plaintiff Trust by misrepresenting that Pues prior personal investment of $100,000 in the same movie project would be imminently "lost" if the additional funds were not immediately provided to Defendants.

77.     Defendants knowingly and wrongfully failed to utilize the funds loaned by Plaintiff solely to cure Defendants breach of the Movie Project agreement as required by and promised to Plaintiff, or to acquire for the benefit of Parnas Holdings investors and creditors the maximum amount of total "points" in the movie project that such funds would have provided as a return on investment and/or credited asset of Parnas Holdings subject to the claims of creditors such as Plaintiff herein.

78.     Defendant Parnas also misrepresented his own credentials and valid licensure status as an investment broker.

79.     47.     Defendants knew or should have known that the promises, representations, acts and/or omissions as set forth herein above were false or made without intention to perform and with the intent and expectation that they would be relied upon by the Trust in deciding whether to lend the money and upon what conditions; or, alternatively, that said statements were made recklessly, without regard for their truthfulness and with an unjustifiably high risk of causing harm to Plaintiff Trust.

80.     Further, Defendants knew the source of said funds were an IRA of a restricted family trust such that if the borrowed funds were not timely repaid to the Trust, it would become exposed to added tax penalties, liabilities and other associated costs totaling a minimum of $161,000.

81.    From the outset, it was the true intention of the Defendants to keep a portion of the loan funds for themselves and to utilize the remaining funds for their wrongful and unjust enrichment, and that Defendants had no intention of ever replacing the short-term bridge funding with any manner of subsequent funding or by the imminent "release" of his purportedly "frozen" personal assets.

82.    Moreover, defendants intended to mislead Plaintiff, as a creditor of defendant Parnas Holdings (as well as other direct investors in Parnas Holdings), as to the credentials and valid licensure status of Parnas and as to true value and extent of Parnas Holdings "points" (corporate assets) actually acquired in the Movie Project, or no justification now or ever has existed for Defendants to acquire any ownership interest in the movie production company itself.

83.    The Trust justifiably relied upon these false promises and misrepresentations to its ultimate damage and detriment as more specifically set forth herein above.

84.    As a result of the foregoing, the Trust has been injured and is entitled to general and special damages in an amount to be determined at trial.

85.    Based upon the specific factual allegations set forth above and incorporated herein, Plaintiff Trust further alleges that all of the Defendants stated conduct has a tendency in reason to cause a reasonable person in the position of a trier of fact, to conclude that such actions constitute malice, thereby entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of Defendants.

86.    Defendants' conduct was intended by Defendants, and each of them, to cause injury and damages to Plaintiff and to the future heirs and beneficiaries of the Plaintiff Trust in that the alleged conduct would necessarily deprive Plaintiff of the value of a lifetime of effort and earnings by its Trustor and deny the beneficiaries of the Plaintiff their rightful enjoyment

21

and interest in both the safety, security and beneficial purpose of Plaintiff's trustor, William C. Pues' intended testamentary goals; or that such conduct was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff subjecting Plaintiff to cruel and unjust hardship in conscious disregard of its and its beneficiaries rights as manifested in Defendants, and each of their, active conduct to participate in and enjoy unjust financial benefit from the actions of themselves and others; and further was an intentional misrepresentation, deceit, or concealment of material facts known to the defendants with the intention to deprive Plaintiff's heirs and beneficiaries of property rights, legal rights or to otherwise cause injury as manifested by their continuing and complicit pattern of unlawful conduct to deny Plaintiff the full benefits and use its personal property funds.

## FIFTH CLAIM
### Prima Facie Tort

87.     Plaintiff repeats and alleges each and every allegation set forth in the previous paragraphs as if they were set forth at length herein.

88.     The Defendants' actions, as set forth more specifically herein above, were extreme and outrageous, and done without excuse or justification.

89.     Upon information and belief, the Defendants' actions were done with malice and for the sole purpose of causing the Pues Trust damage and harm. Based upon the specific factual allegations set forth above and incorporated herein, Plaintiff Trust further alleges that all of the Defendants stated conduct has a tendency in reason to cause a reasonable person in the position of a trier of fact, to conclude that such actions constitute malice, thereby entitling Plaintiff to an award of punitive damages in an amount appropriate to punish or set an example of Ddefendants.

90.     Defendants' conduct was intended by Defendants, and each of them, to cause injury and damages to Plaintiff and to the future heirs and beneficiaries of the Plaintiff Trust in

that the alleged conduct would necessarily deprive Plaintiff of the value of a lifetime of effort and earnings by its Trustor and deny the beneficiaries of the Plaintiff their rightful enjoyment and interest in both the safety, security and beneficial purpose of Plaintiff's trustor, William C. Pues' intended testamentary goals; or that such conduct was despicable conduct carried on by the Defendants with a willful and conscious disregard of the rights of Plaintiff subjecting Plaintiff to cruel and unjust hardship in conscious disregard of its and its beneficiaries rights as manifested in Defendants, and each of their, active conduct to participate in and enjoy unjust financial benefit from the actions of themselves and others; and further was an intentional misrepresentation, deceit, or concealment of material facts known to the defendants with the intention to deprive Plaintiff's heirs and beneficiaries of property rights, legal rights or to otherwise cause injury as manifested by their continuing and complicit pattern of unlawful conduct to deny Plaintiff the full benefits and use its personal property funds.

91.     By reason of the foregoing, the plaintiff has suffered damages in an amount to be determined at the time of trial.

## SIXTH CLAIM
### Unjust Enrichment

92.     Plaintiff repeats and alleges each and every allegation set forth in the previous paragraphs as if they were set forth at length herein.

93.     By reason of Defendants, and each of their, actions as set forth more specifically herein above, Defendants have been unjustly and unfairly enriched to the detriment of Plaintiff.

94.     As a direct and proximate result of Defendants, and each of their conduct, the Plaintiff Trust has suffered damages in an amount to be determined at the time of trial.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests judgment against the Defendants, and each of them, as follows:

A.      On all claims awarding all direct, indirect, consequential, special, compensatory and other damages resulting from the Defendants' wrongful conduct, the amount of which is to be determined at the time of trial but which shall be no less than $1,000,000;

B.      Imposing a constructive trust on all the assets Parnas Holdings, Inc. and Lev Parnas, individually, including but not limited to those assets of Parnas Holdings, Inc. and/or Lev Parnas and under the control of Koala Productions, Ltd. (and/or its successor in interest, Ludy Killer Productions, LLC.), each a California corporation, and for a full and complete Accounting as to all such assets.

C.      Punitive damages to the extent allowable under applicable law; and

D.      Granting of attorneys' fees, interest, costs, disbursements and all other and further relief as the Court deems just and proper.

Dated:  New York, New York
        November 11, 2011

HANTMAN & ASSOCIATES

By: _____
    Robert J. Hantman (RH3947)
    Attorneys for Plaintiff
    1515 Broadway 11th Floor
    New York, New York 10036
    www.Hantmanlaw.com
    Tel. 212-684-3933
    Fax. 212-684-0920

24